HANKINSON *v.* PAGE.

*(Circuit Court, S. D. New York.   June 16, 1887.)*

1. JURISDICTION — RAISING ISSUE BY ANSWER — SECTIONS 488, 498, CODE CIVIL
   PROC. N. Y.
       An action was commenced against a non-resident of the state of New York
   by the levy of an attachment upon property alleged to belong to defendant
   in that state.   Defendant did not appear generally, but by a special answer,
   *"for the purpose of raising the issue as to the jurisdiction of the court."   Held,*
   that the qualified appearance of the defendant was not a waiver of the ob-
   jection which the answer was interposed to raise; sections 488 and 498 of
   New York Code of Civil Procedure authorizing a defendant to present the
   objection by answer.

2. ATTACHMENT — LEVY — LIFE INSURANCE POLICIES — SECTION 649, CODE CIVIL
   PROC. N. Y.
       Defendant had an interest as one of the insured's heirs at law in certain pol-
   icies of life insurance.   A levy under a warrant of attachment against de-
   fendant's property was made, by serving a copy of the warrant and notice
   upon the insurance companies, but without an attempt by the sheriff to take
   the policies into his actual custody.   *Held,* under the circumstances, not a
   proper levy, under section 649, Code Civil Proc. N. Y.

3. SAME — BENEVOLENT ASSOCIATION — INTEREST OF AN HEIR AT LAW.
       The interest of an heir at law of a deceased member of a benevolent asso-
   ciation, in a sum to be raised and paid by the association on the death of a
   member, is attachable in New York, where common law and equity jurisdic-
   tion are blended in one tribunal.

4. SAME — LEVY ON VALID DEMAND AGAINST BENEVOLENT ASSOCIATION — CER-
   TIFICATE OF MEMBERSHIP.
       A. was a member of a benevolent association, which at the time of his death
   had not issued any policy of insurance upon his life, but was under a con-
   tract liability to his heirs at law to assess upon and collect from the several
   members of the association the sum which each member had agreed to pay
   on the death of another member.   A levy under a warrant of attachment
   against P., one of such heirs at law, was made by leaving a copy of the war-
   rant and notice with the association.   *Held* a due service, and that the sheriff
   was not obliged to take into his actual custody a certificate of membership in
   such association, which had been delivered by the association to A.; it not
   being an evidence of debt, like a bond, note, or other instrument for the pay-
   ment of money, and not falling within the category of section 649, Code Civil
   Proc. N. Y., requiring the sheriff, in making a levy under a warrant of attach-
   ment, to take it into his actual custody.

Motion for New Trial.
*Lewis Sanders,* for plaintiff.
*Alfred R. Page,* for defendant.

WALLACE, J.   Exceptions have been filed by the plaintiff to the rul-
ings of the referee before whom this action was tried, and a motion for
a new trial is founded upon the errors alleged by the exceptions.   The
action was brought originally in the supreme court of the state of New
York, and was removed to this court.   The only question litigated on
the trial before the referee was whether jurisdiction was obtained by the
state court over the person of the defendant by due service of process.
The defendant was a non-resident of the state, and the action was sought
to be commenced against him by the levy of an attachment upon prop-
erty alleged to belong to the defendant within this state.   The defendant

did not appear generally in the action, but appeared by attorneys, who served a special answer in the action "for the purpose of raising the issue as to the jurisdiction of the court only." The answer alleged that the court did not have jurisdiction, because the summons was served upon the defendant at Rutland, in the state of Vermont; and that, although a warrant of attachment was granted against the property of the defendant, he did not have any property in this state, and no levy had been made upon his property. The qualified appearance of the defendant was not a waiver of the objection which the answer was interposed to raise. A general appearance in the action would have been a waiver. Commonly such an objection is raised by a motion to dismiss the summons, but in some cases the question presents an issue of fact which can be more satisfactorily determined by an answer in the nature of a plea in abatement. Sections 488 and 498 of the Code of Civil Procedure expressly authorize the defendant to present the objection by an answer. The case of *Hamburger* v. *Baker*, 35 Hun, 455, is directly in point, to the effect that such an answer as was interposed here is not to be regarded as a general appearance in the action, and authorizes the defendant to contest the fact whether the court acquired jurisdiction by sufficient service of process.

If the attachment issued by the state court was levied upon the property of the defendant, the court acquired jurisdiction to the extent necessary to satisfy the plaintiff's demand out of the property seized. By the provisions of the Code of Civil Procedure of this state, an attachment may be levied upon "a cause of action arising upon contract, including a bond, note, or other instrument for the payment of money only, negotiable or otherwise," whether past due or yet to become due, which belongs to the defendant, (section 648;) and the sheriff who executes the writ must collect all debts, effects, and things in action subject to the direction of the court, and may maintain any action or special proceeding in his own name, or name of the defendant, which is necessary for that purpose, (section 655;) and it is made his duty to take into his custody all books of account, vouchers, and other papers relating to the property attached, (section 644.) It is provided by section 649 that a levy under a warrant of attachment must be made "upon personal property, capable of manual delivery, including a bond, promissory note, or other instrument for the payment of money, by taking the same into the sheriff's actual custody." The same section provides that the levy upon other personal property must be made by leaving a certified copy of the warrant, and a notice showing the property attached, with the person holding the same; or, if it consists of a demand other than a bond, promissory note, or other instrument for the payment of money, by leaving a certified copy of the warrant and notice with the person against whom the demand exists.

The levy in this case was sought to be made by serving a copy of the warrant and notice upon several insurance companies which had issued policies of insurance upon the life of John B. Page, then lately deceased, of whom the defendant was one of the heirs at law, but without an at-

tempt by the sheriff to take the policies into his actual custody. Similar service was made upon the National Benefit Society. This was a benevolent association of which John B. Page was a member up to the time of his death. That association had not issued a policy of insurance, but at the time of the service of the warrant of attachment was under a contract liability to the heirs at law of John B. Page to assess upon and collect from the several members of the association the sum which each member had agreed to pay on the death of another member, and was obligated to pay the sum thus collected from its members, to an amount not exceeding $5,000, to the heirs at law of John B. Page. The defendant, in conjunction with the other heirs at law of John B. Page, had a vested demand against the association which was not then payable, but would become payable shortly thereafter, and upon non-payment could proceed by appropriate remedy to compel the association to assess, collect, and pay the amount of its obligation. Unless the defendant's demand against that association falls within the category of personal property "capable of manual delivery, including a bond, promissory note, or other instrument for the payment of money," the sheriff was not required to take anything into his manual custody, but had made due service by leaving a certified copy of the warrant and notice with the association. The only instrument evidencing the obligation of the association to collect and pay the sum mentioned to the heirs at law of John B. Page upon his death was a certificate of membership in the association which had been delivered by the association to John B. Page. This certainly was not an evidence of debt in the ordinary acceptation of that term, like bonds, notes, and ordinary instruments for the payment of money. Even a policy of insurance would not fall within this description. *People* v. *Brown*, 6 Cow. 41; *Tyler* v. *Ætna Ins. Co.*, 2 Wend. 280.

All contracts which contain an obligation for the payment of money by one of the parties are, in one sense, instruments for the payment of money. A contract in writing for the building of a house between the owner and builder is in this sense an instrument for the payment of money on the part of the owner, although the payments to be made by him generally depend upon the completion of the whole or a portion of the work by the builder. *Alder* v. *Bloomingdale*, 1 Duer, 601. There is also a large class of contracts strictly unilateral in which the promise is one for the payment of money only, but by which the money is payable conditionally. A policy of insurance belongs to this class. These contracts are evidenced by instruments signed only by the maker, and are delivered to the payee or obligee, and presumably the originals are not to be found in the possession of the party who promises to pay. It is unreasonable to suppose that all contracts under which money may become payable were intended to be included in the language under consideration. At most, it would seem to be intended to apply only to such unilateral contracts for the payment of money as are usually evidenced by written instruments delivered by the payor or obligor to the payee or obligee. The provision requiring the instrument to be taken into the sheriff's actual custody relates to property "capable of manual

delivery." It probably refers to the same instruments mentioned in section 648, "for the payment of money only, negotiable or otherwise." It appropriately includes all instruments like bonds, notes, bills of exchange, and certificates of deposit, the title to which may pass by delivery, and do not require a formal assignment in order to enable the person to whom the instrument is delivered to maintain an action upon it in his own name. Upon the rule, *noscitur a sociis*, the words, "other instruments for the payment of money," are to be interpreted as referring to instruments of similar character with bonds and promissory notes, such as are evidences of debt, and the title to which passes by delivery merely. But there is also fair reason to contend that the provision is intended to include all other instruments which are unilateral contracts for the payment of money only. The apparent purpose of the provision is to require the sheriff to reduce the property attached to his possession so far as, under the circumstances, it can practically be done. This is the rule which prevails in the absence of statutory direction. In general, to constitute a sufficient attachment of personal property, the officer must take such custody of it upon a levy as will enable him to retain and assert his power over it, so that it cannot probably be withdrawn or taken by another without his knowing it. *Hemmenway* v. *Wheeler*, 14 Pick. 408; *Tomlinson* v. *Collins*, 20 Conn. 364; *Odiorne* v. *Colley*, 2 N. H. 66; *Blake* v. *Hatch*, 25 Vt. 555; *Learned* v. *Vandenburgh*, 7 How. Pr. 379.

When a unilateral instrument, containing the promise of another to pay money, is in the possession of the defendant himself, or, belonging to the defendant, is in the possession of a third person, it is practicable for the sheriff to take it into his actual custody, and the Code provision would seem to require him to do so.

In accordance with these views, the referee was correct in his conclusion that the attachment was not levied, as the statute directs, upon the policies of insurance. But a certificate of membership in an incorporated or unincorporated association cannot, upon any reasonable theory, be considered as an instrument for the payment of money, within the meaning of the provision in question, and consequently the interest of the defendant in the demand against the National Benefit Society was properly attached by the sheriff.

It is insisted for the defendant that the demand of the defendant against the National Benefit Society was in the nature of equitable assets, and therefore could not be attached. Although an attachment is a special remedy at law, and, in the absence of statutory authority, does not reach property or interests which can only be realized by the assistance of a court of equity, the tendency of legislation in this country has been to enlarge the operation of the writ, and subject interests and kinds of property to seizure under an attachment which are not subject to execution at law. Drake, Attachm. § 7. In this state the common law and equity jurisdiction are blended in the same tribunal, and there is consequently no inconvenience in extending the remedy of an attachment so that the levy will embrace equitable interests of the defendant

in real and personal property. The question is whether this has been done by the provisions of the Code. No decisions of the state courts have been cited by counsel in which the precise question now presented has been considered. But in *Thurber* v. *Blanck*, 50 N. Y. 80, the court of appeals, in considering the effect of an attachment under the Code then existing, in which the provisions were similar to those of the present Code, were of the opinion that the lien of an attachment upon choses in action and debts could only be created upon legal titles, and not upon mere equities. The court used this language:

"Debts and choses in action are to be regarded as legal assets under the attachment laws, wherever that process acts directly upon the legal title; but, whenever they are so situated as to require the exercise of the equity powers of the court to place them in that situation, they must be treated as they always were,—as equitable assets only."

See, also, *Castle* v. *Lewis*, 78 N. Y. 135, and *Anthony* v. *Wood*, 96 N. Y. 180.

The question thus considered, although not the exact question here, involves somewhat the meaning of the Code provisions, and the consideration whether they extend the lien of an attachment so as to operate upon choses in action which can be collected only in a court of equity. These citations seem to sustain the defendant's contention, and it is significant, as tending to the same conclusion, that the causes of action arising upon contract mentioned in section 648, which are specifically enumerated in the section, are all of them causes of action at law. The conclusion, therefore, is that the Code provisions were not intended to create any innovation upon the generally prevailing and original system of the remedy by attachment, under which the operation of the process is confined to legal debts as contradistinguished from equitable demands. This conclusion, however, does not help the defendant, unless it can be maintained that the defendant's remedy upon the cause of action to secure the sum payable to him is exclusively in equity. The association undertook to pay him a sum of money by making an assessment upon its members, and paying what should be realized thereon, not exceeding $5,000, to the beneficiaries named in the contract. Upon refusal to make the assessment, it would be liable at law for such sum as might have been collected if it had fulfilled its undertaking. It would not be permitted to allege that nothing was due the plaintiff because of its own default in not doing what it had agreed to do. Any condition in the contract by which it is attempted to deprive the beneficiaries of the judgment of a court of competent jurisdiction as to the extent of the legal obligation of the association could not stand in the way of a recovery. Such a condition affects the right to a judicial trial, and is void as against public policy. *Insurance Co.* v. *Morse*, 20 Wall. 445; *Nute* v. *Hamilton Mut. Ins. Co.*, 6 Gray, 174, 181; *Tobey* v. *County of Bristol*, 3 Story, 800.

On the other hand, if the association should collect the sum payable from the members, or any part of it, the money would belong to the beneficiaries, and they could maintain an action at law to recover it.

Doubtless they could resort to equity, and seek a mandatory injunction to compel the association to make an assessment upon its refusal to do so; but, although they might elect to pursue this course, they would not necessarily have to do so. It must therefore be held that the attachment was properly levied upon the demand of the defendant against the National Benefit Society, and consequently that the defense of want of jurisdiction should not have prevailed. A new trial is granted.